UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ANTHONY VINCE NAIL SPA, INC. d/b/a M. VINCE NAIL SPA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:21-cv-00366 ) |
| M VINCE NAIL SPA, L.L.C., BINH T. NGUYEN, MT VINCE NAIL SPA L.L.C., and RAYMOND T. DO, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Pending before the Court is Plaintiff's Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Doc. No. 31). Plaintiff claims that Defendants infringed on its trademarks in violation of the Lanham Act, 15 U.S.C. § 1051 *et. seq.* and requests that the Court: (1) enter a default judgment; (2) issue a permanent injunction enjoining Defendants from infringing on its trademarks; (3) award statutory damages; and (4) dismiss all remaining claims with prejudice. (Doc. No. 32 at 16). Defendants have not responded. For the following reasons, Plaintiff's Motion will be granted in part and denied in part.

Default judgment will be entered against Defendants for: (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I); (2) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); (3) deceptive trade practices under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104 (Count VI); and (4) unjust enrichment (Count VII). Plaintiff's claim for trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (Count III) will be dismissed. Defendants will be

permanently enjoined from infringing on Plaintiff's trademarks, and Plaintiff is awarded $60,000 in statutory damages.

## I. FACTUAL BACKGROUND[1]

Plaintiff is an Illinois corporation that operates a chain of over 50 cosmetology salons throughout the United States. (Compl. ¶ 31). The salons provide various nail spa services, including manicures, pedicures, facials, and waxing services. (Id. ¶ 3). In 2019, Plaintiff opened a line of salons under the name, "M. Vincé Nail Spa" ("M. Vincé") and operates seven (7) such locations across Colorado, Idaho, Indiana, Nebraska, Texas and Utah. (Id. ¶¶ 5, 32–33). It owns two registered trademarks and one pending registration for the M. Vincé salons. ("M. Vincé Trademarks"). (Id. ¶ 21). The trademarks have been used to market various cosmetology services since November 1, 2019. (Id. ¶ 22).

Defendants have operated various nail salons with similar names to the M. Vincé salons. (Id. ¶ 36). In October 1, 2020, Defendants filed to incorporate "M Vince Nail Spa LLC" with the Tennessee Secretary of State. (Noh Decl., Doc. No. 31-2 ¶ 9). Defendants' incorporation post-dates Plaintiff's use of the M. Vincé trademarks. (Compl. ¶ 61). Once Plaintiff became aware of Defendants' alleged use of its trademarks, it requested that Defendants immediately stop doing so. (Id. ¶ 39). On March 22, 2021, Defendant slightly altered its logo, dissolved "M. Vince Nail Spa LLC," and, five days later, formed "MT Vince Nail Spa" using the same principal place of business. (Id. ¶ 9; see also Doc. No. 31-2 ¶ 10). Defendants listed Raymond Do as the registered agent. (Doc. No. 31-2 ¶ 10).

---

[1] In determining whether to enter a default judgment under Federal Rule of Civil Procedure 55(b)(2), courts "accept[] as true the well-pleaded allegations of the complaint." Annette v. Haslam, No. 3:18-CV-1299, 2020 WL 2520512, at *1 (M.D. Tenn. May 18, 2020); see also In re Family Resorts of America, Inc., No. 9104127, 1992 WL 174539, at *4 (6th Cir. July 24, 1992).

On May 19, 2021, Plaintiff served Do with the Summons and Complaint. (Id. ¶ 13). That same day, "MT Vince Nail Spa" changed its registered agent to Binh Nguyen. (Id.). On May 27, 2021, Nguyen sent a letter to Plaintiff's counsel informing them that "MT Vince Nail Spa" had been changed to "TMV Nail Spa," and that Defendants would change their logo and advertising to that new name. (Doc. No. 31-3 ¶ 13). But on September 22, 2021, Plaintiff discovered that Defendants continued to advertise under the "MT Vince Nail Spa" name and logo. (Doc. No. 31-1 ¶ 14; see also Doc. No. 31-4; Compl. ¶ 42).

It is alleged that Defendants' continued use of Plaintiff's trademarks is deliberate, willful, and wanton. (Compl. ¶ 42; see also Doc. No. 31-2 ¶ 14). Further, Plaintiff alleges that Defendants have created a likelihood of confusion in the marketplace that will increase if Defendants are allowed to continue its misappropriation of the M. Vincé trademarks. (Compl. ¶ 48).

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 55(b) governs entry of default judgment where, as here, default has been entered against a party under Rule 55(a)." Driver v. Fabish, No. 3:13-cv-01087, 2017 WL 413719, at *1 (M.D. Tenn. Jan. 31, 2017). After the clerk enters default, "the plaintiff's well-pleaded allegations are deemed admitted." Progressive Haw. Ins. Corp. v. Garza, No. 3:20-cv-00980, 2021 WL 2952941, at *2 (M.D. Tenn. July 14, 2021) (citing Thomas v. Miller, 489 F.3d 293, 299 (6th Cir. 2007)).

The Court may enter default judgment with or without a hearing. (See Fed. R. Civ. P. 55(b)). "The decision to enter a default judgment under Rule 55(b)(2) lies in the district court's sound discretion." Mucerino v. Newman, No. 3:14-cv-00028, 2017 WL 387202, at *2 (M.D. Tenn. Jan. 26, 2017). Courts analyze several factors to determine whether to enter default judgment, including: "(1) prejudice to the plaintiff; (2) the merits of the plaintiff's claim; (3) the complaint's

3

Case 3:21-cv-00366   Document 33   Filed 11/04/21   Page 3 of 14 PageID #: 182

sufficiency; (4) the amount of money at stake; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy favoring decisions on the merits." Exec. Corp. v. Oisoon, LLC, No. 3:16-cv-00898, 2017 WL 4310113, at *2 (M.D. Tenn. Sept. 28, 2017) (citation omitted).

### III. ANALYSIS

Based on the well-pleaded factual allegations in the complaint, and the declarations and exhibits submitted in support of their motion, the Court concludes that there is "sufficient basis for determining defendants' liability without the need for a hearing." Chanel, Inc. v. Jermaine Wrice, No. 5:13-cv-891, 2015 WL 521144, at *3 (N.D. Ohio Feb. 9, 2015).

"Even though the well-pleaded factual allegations of the complaint are accepted as true for purposes of liability, the Court must still determine whether those facts are sufficient to state a claim for relief as to the cause of action for which the plaintiff[] seeks default judgment." Id. (citation omitted). The Complaint alleges that Defendants' actions constitute: (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Count I) (Compl. ¶¶ 43–52); (2) false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II) (Compl. ¶¶ 53–58); (3) trademark dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (Count III) (Compl. ¶¶ 59–67); (4) deceptive trade practices under the Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. § 47-18-104 (Count VI) (Compl. ¶¶ 68–73); and (5) unjust enrichment (Count VII).[2] Plaintiff seeks default judgment on each count of the complaint. The Court will discuss each.

A. <u>Trademark Infringement</u>

---

[2] Plaintiff appears to have mis-numbered its TCPA and unjust enrichment claims as Count VI and Count VII rather than Count IV and Count V. The Court will refer to Plaintiff's numbering for ease of analysis.

4

Section 32 of the Lanham Act prohibits, "without consent of the registrant," the use of any "registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which the use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). Section 32 also prohibits the imitation of such registered marks with the intent to use them in commerce. Id. § 1114(1)(b).

"To establish trademark infringement under 15 U.S.C. § 1114, plaintiff[] must show that: (1) they own a valid trademark; (2) defendants used the trademark 'in commerce' without plaintiffs' authorization; (3) defendants used Plaintiffs' [trademark], or an imitation thereof, 'in connection with the sale, offering for sale, distribution, or advertising' of goods and services; and (4) defendants' use of the [trademark] is likely to cause consumer confusion." Chanel, 2015 WL 521144, at *4. The crux of whether a party is liable for trademark infringement "is whether defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr., 109 F.3d 275, 280 (6th Cir. 1997).

Here, based on the allegations in the Complaint, which the Court must accept as true, Plaintiff has established the requisite elements for a trademark infringement claim under 15 U.S.C. § 1114. Plaintiff owns two registered trademarks and one pending registration for the M. Vincé salons, and Defendants have violated the Lanham Act by advertising identical spa services under imitations of Plaintiff's trademarks without their consent. By defaulting, Defendants admit that their use of the M. Vincé Trademarks is "likely to cause confusion among consumers regarding the origin of the goods offered by the parties." Daddy's Junky Music Stores, Inc., 109 F.3d at 280.

Accordingly, Plaintiff is entitled to default judgment on Count I for trademark infringement in violation of 15 U.S.C. § 1114.

B. <u>False Designation of Origin</u>

"The Lanham Act covers trademark infringement as well as a host of other deceptive practices that might loosely be termed 'unfair competition.'" <u>Johnson v. Jones</u>, 149 F.3d 494, 501 (6th Cir. 1998). Section 43(a) of the Act protects against one such form of unfair competition, known as false designation of origin. The Act imposes liability on "any person who, on or in connection with any goods or services . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin . . . of his or her goods, services, or commercial activities." 15 U.S.C. § 1125(a)(1)(A).

To establish a claim for false designation of origin, a plaintiff must show a "likelihood of confusion." <u>Champions Golf Club, Inc. v. The Champions Golf Club, Inc.</u>, 78 F.3d 1111, 1123 (6th Cir. 1996). Courts typically consider various factors in determining a likelihood of confusion, including: (1) "the relatedness of the services or goods offered by plaintiff and defendant"; (2) "the similarity between the marks"; and (3) "likelihood of expansion of the product lines using the marks." <u>Johnson</u>, 149 F.3d at 502-03 (citing <u>Homeowners Group, Inc. v. Home Marketing Specialists, Inc.</u>, 931 F.2d 1100, 1006 (6th Cir. 1991)).

Here, based on the undisputed allegations of the complaint, Defendants are liable for false designation of origin under Section 43(a) of the Lanham Act. Plaintiff and Defendant offer identical services; Defendants have used near identical logos and names as Plaintiff's trademarks; and Plaintiff plans to expand its product line under the M. Vincé name. Defendants' services are likely to be mistaken for the actual services offered by Plaintiff, resulting in customer confusion.

Accordingly, Plaintiff is entitled to default judgment on Count II for false designation of origin in violation of 15 U.S.C. § 1125.

C. Trademark Dilution

The Lanham Act also forbids dilution of known trademarks, providing that "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c). The Act defines "dilution by blurring" as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." Id. § 1125(c)(2)(B). To determine whether trademark dilution has occurred, courts may consider several factors, including: (1) "the degree of similarity between the mark or trade name and the famous mark" and (2) "whether the user of the mark or trade name intended to create an association with the famous mark." Id.

Under the Lanham Act, a "mark is famous when it is 'widely recognized by the general public of the United States as a designation of source of the goods or services of the mark's owner.'" Kibler v. Hall, 843 F.3d 1068, 1083 (6th Cir. 2016) (citing 15 U.S.C. § 1125(c)(2)(A)). Establishing fame for purposes of a trademark dilution claim is a difficult burden, as "[c]ourts have interpreted the [Lanham] Act to require the mark to be a 'household name.'" Id. (citing Coach Servs., Inc. v. Triumph Learning LLC, 668 F.3d 1356, 1373 (Fed. Cir. 2012)). Typically, this means that the general public must associate the term, "in almost any context," with the "mark's owner." Id.; see also Audi AG v. D'Amato, 469 F.3d 534, 547 (6th Cir. 2006) (noting that "AUDI" marks are famous for purposes of a trademark dilution claim because Audi had spent millions of dollars on them and they are known globally).

To establish a trademark dilution claim, Plaintiff must establish: "(1) the senior mark must be famous; (2) it must be distinctive; (3) the junior use must be a commercial use in commerce; (4) it must begin after the senior mark has become famous; and (5) it must cause dilution of the distinctive quality of the senior mark." AutoZone, Inc. v. Tandy Corp., 174 F. Supp. 2d 718, 734 (M.D. Tenn. 2001) (citing Kellogg Co. v. Exxon Corp., 209 F.3d 562, 576–77 (6th Cir. 2000)).

Here, even based on the undisputed allegations of the complaint, the Court cannot conclude that Defendants are liable for trademark dilution under the Lanham Act. Plaintiff has not alleged that the M. Vincé name rises to the requisite level of fame. Although the name may be known by customers because Plaintiff operates several stores within the United States, there are no allegations to infer that M. Vincé is a "household name" in the same vein as Audi or other major, global corporations.

Accordingly, Plaintiff is not entitled to default judgment on Count III for trademark dilution in violation of 15 U.S.C. § 1125.

### D. Deceptive Trade Practices Under the TCPA

The TCPA forbids deceptive trade practices, including: "falsely passing off goods or services as those of another"'; or "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services . . . ." Tenn. Code Ann. § 47-18-104(b)(1)–(2). To establish a claim under the TCPA, Plaintiff must prove "(1) that the defendant engaged in an unfair or deceptive act or practice declared unlawful by the TCPA and (2) that the defendant's conduct caused an 'ascertainable loss of money or property, real, personal, or mixed, or any other article or commodity, or thing of value wherever situated . . . .'" Roopchan v. ADT Sec. Sys., Inc., 781 F. Supp. 2d 636, 656 (E.D. Tenn. 2011) (citing Tucker v. Sierra Builders, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005)). An act is deceptive where it "involves a

'material misrepresentation, practice or omission likely to mislead a reasonable consumer.'" Id. (citing Davis v. McGuigan, 325 S.W.3d 149, 162 (Tenn. 2010) (internal citation omitted)).

Here, based on the allegations in the Complaint, Plaintiff has established the requisite elements for a deceptive trade practices claim under the TCPA. As discussed above, by defaulting, Defendants admit that their use of the M. Vincé Trademarks "falsely pass[es]" off Plaintiff's spa services as their own and is likely to cause "confusion as to the source" of those services. Tenn. Code Ann. § 47-18-104(b)(1)–(2).

Accordingly, Plaintiff is entitled to default judgment on Count VI for deceptive trade practices in violation of the TCPA.

E. Unjust Enrichment

To establish an unjust enrichment claim under Tennessee law, Plaintiff must establish: "(1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance of such benefit under such circumstances that it would be inequitable for him or her to retain the benefit without payment of the value thereof." United States v. Goforth, 465 F.3d 730, 733–34 (6th Cir. 2006) (citing Freeman Indus., LLC v. Eastman Chem. Co., 172 SW.3d 512, 525 (Tenn. 2005)). "In the trademark infringement context," the Sixth Circuit has found that unjust enrichment claims may be appropriate to recoup financial losses. Laukus v. Rio Brands, Inc., 391 F. App'x 416, 423–24 (6th Cir. 2010) (citation omitted).

Here, based on the undisputed allegations, Plaintiff has sufficiently pled a claim for unjust enrichment. Plaintiff alleges that Defendants' unauthorized use of the M. Vincé Trademarks conferred a financial benefit on Defendants, which Defendants obtained willfully and deliberately. By defaulting, Defendants admit that acceptance of these financial benefits is inequitable without payment "for the value thereof." Goforth, 465 F.3d at 733–34 (citation omitted).

9

Accordingly, Plaintiff is entitled to default judgment on Count VII for unjust enrichment.

F.  Statutory Damages

Entry of default is not an admission of damages. See Vesligaj v. Peterson, 441 F. App'x, 355 (6th Cir. 2009) ("Where damages are unliquidated a default admits only [the defaulting party's] liability and the amount of damages must be proved."). Here, Plaintiff requests statutory damages pursuant to 15 U.S.C. § 1117. (Doc. No. 32 at 15). Section 1117(c) permits statutory damages of "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1).

Section 1117(c) also provides for enhanced statutory damages of up to $2,000,000 per trademark where a defendant has knowledge that their actions are infringing. 15 U.S.C. § 1117(c)(2). "A defendant's continued infringement after notice of his wrongdoing is probative evidence of willfulness." Microsoft Corp. v. McGee, 490 F. Supp. 2d 874, 880 (S.D. Ohio 2007) (citation omitted). Courts may also infer willfulness where defendants default. Id.; see also Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("By virtue of the default, [Defendants'] infringement is deemed willful[.]"). Here, the Court concludes that Defendants' infringing activity was willful, as established not only by their default and failure to appear, but also "their continued violations of the Lanham Act even after notice that their actions infringed" the M. Vincé Trademarks. Chanel, 2015 WL 521144, at *7.

Plaintiff acknowledges Defendants' conduct is willful but instead requests statutory damages in the amount of $600,000 – $200,000 for each of the three trademarks infringed. (Doc. No. 32 at 15). Plaintiff's requested damages amount is not a sum certain "because the amount of statutory damages awarded is within the discretion of the Court." Shockley v. Portfolio Recovery Assocs., LLC, No. 5:18-cv-010-JMH, 2018 WL 5726190, at *1 (E.D. Ky. Nov. 1, 2018) (citing

10

Charvat v. NMP, LLC, No. 2:09-CV-209, 2012 WL 2577489, at *2 (S.D. Ohio July 3, 2012)). "[W]here the damages sought are not for a sum certain, the Court must determine the propriety and amount of the default judgment." Chanel, 2015 WL 521144, at *5 (citation omitted); see also Fed. R. Civ. P. 55(b)). To determine damages, the Court may, but is not required to, hold an evidentiary hearing. See I Love Juice Bar Franchising, LLC v. ILJB Charlotte Juice, LLC, No. 3:19-cv-00981, 2020 WL 4735031, at *3 (M.D. Tenn. Aug. 14, 2020). However, a hearing is not required where: (1) there is a basis for statutory damages; and (2) defendants "have been served with plaintiffs' complaint, the Court's entry of default, and plaintiffs' motion at their address of record, but have failed to appear or otherwise defendant this action . . . ." Chanel, 2015 WL 521144, at *6.

In this case, a hearing is not required because the record establishes that statutory damages are appropriate, and Defendants failed to appear. By defaulting, Defendants admit that they infringed on Plaintiff's M. Vincé Trademarks, as defined by 15 U.S.C. § 1116(d), and that Defendants imitated these marks for identical services offered. The Court therefore has discretion to award statutory damages under Section 1117(c). Statutory damages are especially appropriate in default judgment cases "because the information needed to prove actual damages is within the infringers' control and is not disclosed." 490 F. Supp. at 882 (collecting cases). Moreover, Defendants have been served with the Complaint, the Court's initial entry of default under 55(a) and have nonetheless failed to defend this action. Indeed, Defendants even corresponded with Plaintiff after being served the Complaint to notify them of their name change. (Doc. No. 31-3 ¶ 13). In short, because Defendants "would likely not participate in an evidentiary hearing," and because statutory damages are appropriate, the Court need not hold a hearing. Chanel, 2015 WL 521144, at *6.

11

Case 3:21-cv-00366   Document 33   Filed 11/04/21   Page 11 of 14 PageID #: 190

The Court will, however, invoke its discretion to award statutory damages for lower than the amount requested by Plaintiff. The Court has "wide discretion to determine the amount of statutory damages between the statutory maxima and minima." Microsoft Corp. v. Ricketts, No. C 06-06712 WHA, 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007) (citing Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984)); see also Shockley, 2018 WL 5726190, at *1; Charvat, 2012 WL 2577489, at *2. Some courts look to actual damages to calculate the statutory award. See Exec. Corp., 2017 WL 4310113, at *2; see also Ricketts, 2007 WL 1520965, at *4. However, in this case, Plaintiff has not presented evidence, such as affidavits or declarations, or how much Defendants profited from infringing the M. Vincé Trademarks. Where a party does not present evidence of actual damages, the Court may use its discretion in awarding statutory damages. Ricketts, 2007 WL 1520965, at *4. Here, the Court concludes that statutory damages in the amount of $20,000 per infringed mark is appropriate, for a total of $60,000. This is twenty times the minimum under the statute to "reflect the finding of willfulness." Ricketts, 2007 WL 1520965, at *4 (noting that twice the minimum under the statute may reflect a willfulness finding); see also 15 U.S.C. 1117(c). These statutory damages, in conjunction with the injunctive relief discussed below, will adequately deter Defendants from future infringing conduct. Accordingly, the Court awards statutory damages to Plaintiff in the amount of $60,000.

G.  Injunctive Relief

Plaintiff also seeks a permanent injunction under Federal Rule of Civil Procedure 65, 15 U.S.C. § 1116, 17 U.S.C. § 502, and Tenn. Code Ann. § 47-18-108 enjoining Defendants from: (1) "advertising, marketing, promoting, supplying, distributing, offering for sale, or selling any goods or services that bear" the M. Vincé Trademarks or "any other mark or design element substantially similar or confusing thereto"; and (2) "engaging in any other activity constituting

unfair competition with Plaintiff, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations or design elements associated with" the M. Vincé Trademarks. (Compl. at 14).

The Lanham Act allows courts to "grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable . . . to prevent a violation" of the sections discussed above. 15 U.S.C. § 1116(a).

To obtain injunctive relief, Plaintiff must show that: "(1) it has suffered irreparable injury; (2) remedies at law are not adequate to compensate for that injury; (3) the balance of hardship between the plaintiff and the defendant weighs in favor of a permanent injunction; and (4) it is in the public interest to issue an injunction." I Love Juice Bar Franchising, 2020 WL 4735031, at *5 (citing Audi AG, 469 F.3d at 550). "The decision whether to grant a permanent injunction lies within the sound discretion of the Court." Id. (citation omitted).

The Court concludes that a permanent injunction is warranted. First, Plaintiff has shown it will suffer irreparable injury if Defendants are not enjoined from infringing on the M. Vincé Trademarks. "[N]o particular finding of likelihood of . . . irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." Circuit City Stores, Inc. v. CarMax, Inc., 165 F.3d 1047, 1056 (6th Cir. 1999). By defaulting, Defendants admit that their use of Plaintiff's trademarks is likely to cause confusion in the industry regarding the source of M. Vincé services, and it is likely that damage to Plaintiff's goodwill and reputation will result. This is enough to constitute irreparable harm. See I Love Juice Bar Franchising, 2020 WL 4735031, at *6.

Second, Plaintiff has established that remedies at law are not adequate to compensate for its injuries. The Sixth Circuit has found that money damages are inadequate to remedy reputational

13

harm caused by a likelihood of consumer confusion. Circuit City, 165 F.3d at 1056. Third, "Defendants face no hardship as a consequence of their compelled compliance with federal law." I Love Juice Bar Franchising, 2020 WL 4735031, at *6; see also Audi AG, 469 F.3d at 550. Fourth, an injunction is in the public interest. Courts have found that permanent injunctions to "enforce federal trademark laws and to prevent customers from being misled regarding the source and origin of" products or services is in the public interest. See I Love Juice Bar Franchising, 2020 WL 4735031, at *6; see also Chanel, 2015 WL 521144, at *9. Plaintiff's proposed permanent injunction is also sufficiently "specific in its terms," and describes "in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained." Fed. R. Civ. P. 65(d).

Accordingly, the Court will grant Plaintiff's requested injunctive relief.

## IV. CONCLUSION

For the foregoing reasons, default judgment will be entered against Defendants for: (1) trademark infringement under Section 32 of the Lanham Act (Count I); (2) false designation of origin under Section 43(a) of the Lanham Act (Count II); (3) deceptive trade practices under the TCPA (Count VI); and (4) unjust enrichment (Count VII). Plaintiff's claim for trademark dilution under Section 43(c) of the Lanham Act (Count III) will be dismissed. Defendants will be permanently enjoined from infringing the M. Vincé Trademarks, and Plaintiff is awarded $60,000 in statutory damages.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE